**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| ANDREW CORDOVA,<br><br>          Plaintiff,<br><br>     v.<br><br>AMERICAN FAMILY MUTUAL<br>INSURANCE COMPANY, et al.,<br><br>          Defendants. | Case No. 2:13-CV-1111-KJD-VCF<br><br>**ORDER** |

Before the Court is Defendant American Family Mutual Insurance Company's Motion for Summary Judgment (#27). Plaintiff Andrew Cordova filed a response in opposition (#35) to which Defendant replied (#36). Also before the Court is Plaintiff's Motion for Leave to File Excess Pages (#34).

I. Background

Plaintiff, a Las Vegas resident, was involved in an accident in 2012, during which he was hit by another driver who slid through a stop sign (#1, pp. 1-4; #27, p. 1). After the accident, Plaintiff reported that he was briefly knocked unconscious by the collision and sustained multiple injuries (#27, Ex. C at AF00042). The other driver accepted fault, but was underinsured and unable to adequately compensate Plaintiff (#1, p. 3). Plaintiff was an insured of Defendant at the time, which provided underinsured medical ("UIM") coverage with limits of $100,000 per person and $300,000 per occurrence (#27, pp. 1-2).

///

1    Shortly after it became aware of Plaintiff's accident, Defendant sent Plaintiff a letter
2  asking him to sign a medical authorization, which would allow Defendant to obtain his medical
3  records and bills (#27, Ex. D). Defendant also spoke with Plaintiff and gathered information
4  about the accident (#27, Ex. C at AF00041-AF00043).
5    Two months later, Plaintiff informed Defendant that he would need his UIM coverage to
6  pay for two shoulder surgeries he needed as a result of the accident (#27, Ex. C at AF00037).
7  Plaintiff also informed Defendant that he had undergone previous surgeries on his shoulders two
8  years ago. Id. After this conversation, Defendant noted in its files that it needed Plaintiff's
9  medical records to review apportionment for any pre-existing conditions, but had not received
10 Plaintiff's medical authorization. Id. Defendant additionally noted that it did not know whether
11 Plaintiff wanted to make a wage loss claim. Id. Defendant then sent Plaintiff a second letter and
12 asked him to sign an authorization for his medical records and an authorization for his
13 employment information. Id.; #27, Ex. E.
14   Plaintiff called Defendant several weeks later and wanted to settle his claim, to which
15 Defendant explained that it needed Plaintiff's medical and employment information (#27, Ex. C
16 at AF00036). Plaintiff stated that he would fax the information to Defendant and return the
17 signed medical authorization. Id. After two weeks, Defendant had not received any
18 authorizations from Plaintiff, so it sent another letter asking Plaintiff to sign the authorizations.
19 Id.; #27, Ex. F.
20   Plaintiff called soon after to confirm that Defendant received his fax (#27, Ex. C at
21 AF00035). During the conversation, Plaintiff stated that he never received Defendant's letter. Id.
22 Defendant confirmed Plaintiff's address, said that it recently sent Plaintiff a second letter, and
23 urged Plaintiff to return the medical and employment authorizations to Defendant. Id.
24   A month later, Plaintiff called Defendant. Id. at AF00034. Defendant asked about the
25 authorizations, to which Plaintiff stated that it would be faster for him to retrieve the records
26 ///

1  Defendant wanted. Id. Defendant listed several documents that it needed, and Plaintiff promised
2  to fax Defendant the information. Id.
3  Plaintiff called again not long after. Id. Defendant indicated that it had not received
4  Plaintiff's recent MRIs. Id. Plaintiff stated he would send them. Id. at AF00033.
5  Defendant later sent the claim to a nurse for review. Id. at AF00030. The nurse who
6  performed the review based her opinion on the documents available in Plaintiff's file at the time
7  (#27 Ex. G). The nurse concluded that most of Plaintiff's injuries predated his most recent
8  accident. Id.
9  Defendant determined, based on the nurse's review and Plaintiff's file, that $7,880.06
10 was related to Plaintiff's accident and that Plaintiff had been fully compensated (#27 Ex. C at
11 AF00031). Defendant spoke with Plaintiff and explained its decision. Id. at AF00030. Plaintiff
12 requested a letter outlining Defendant's position and Defendant complied with Plaintiff's
13 request. Id.; #27, Ex. I. Soon after, Plaintiff filed the present action.

14 II. Summary Judgment Standard

15 The purpose of summary judgment is to "pierce the pleadings and to assess the proof in
16 order to see whether there is a genuine need for trial." Matsushita Elec. Indus. Co. v. Zenith
17 Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment may be granted if the pleadings,
18 depositions, affidavits, and other materials of the record show that there is no genuine issue of
19 material fact and that the moving party is entitled to judgment as a matter of law. See FED. R.
20 CIV. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).
21 A fact is material if it might affect the outcome of the suit under the governing law.
22 Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Uncorroborated and self-serving
23 testimony, without more, will not create a genuine issue of material fact. See Villiarimo v. Aloha
24 Island Air Inc., 281 F.3d 1054, 1061 (9th Cir. 2002). Conclusory or speculative testimony is also
25 insufficient to raise a genuine issue of fact. Anheuser Busch, Inc. v. Natural Beverage Distribs.,
26 69 F.3d 337, 345 (9th Cir. 1995).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323. Once that burden is met, it then shifts to the nonmoving party to set forth specific facts demonstrating that a genuine issue exists. See Matsushita, 475 U.S. at 587; FED. R. CIV. P. 56(e). If the nonmoving party fails to make a sufficient showing of an essential element for which it bears the burden of proof, the moving party is entitled to summary judgment. See Celotex, 477 U.S. at 322-23.

III. Analysis

A. Plaintiff's Motion for Leave to File Excess Pages

Plaintiff requests leave to file a response that exceeds the 20 page limit of Nevada Local Rule 7-4. Defendant did not respond to Plaintiff's motion. Therefore, in accordance with Local Rule 7-2(d) and good cause being found, Plaintiff's motion is granted.

B. Defendant's Motion for Summary Judgment

Defendant requests summary judgment on all Plaintiff's claims. Plaintiff's complaint raises several claims, including (1) breach of contract, (2) breach of good faith and fair dealing, and (3) unfair practices.[1] Defendant additionally requests summary judgment as to Plaintiff's prayer for punitive damages.

1. Breach of Contract

Defendant argues that Plaintiff's breach of contract claim should be barred because Plaintiff failed to comply with his insurance policy and send Defendant his signed medical and employment authorizations. When an insurance policy explicitly makes compliance with a term in the policy a condition precedent to coverage, the insured has the burden of establishing that it complied with that term. Las Vegas Metro. Police Dept. v. Coregis Ins. Co., 256 P.3d 958, 962 (Nev. 2011). Nevada law clearly enforces these coverage conditions, and precludes coverage

///

---

[1] Plaintiff's complaint also contains a cause of action for breach of fiduciary duty. This, however, was previously addressed and dismissed in the Court's Order (#40) granting Defendant's Motion to Dismiss. The issue is thus moot and will not be addressed in this order.

irrespective of whether there is any prejudice to the carrier. Schwartz v. State Farm Mut. Auto. Ins. Co., 2:07-CV-00060-KJD-LRL, 2009 WL 2197370, at *7 (D. Nev. July 23, 2009).

In the present case, many of Plaintiff's duties and responsibilities toward Defendant are outlined in his insurance policy, which states:

> If we are prejudiced by a failure to comply with the following duties, then we have no duty to provide coverage under this policy.
>
> ….
>
> B. Other Duties
>
> 1. Each person claiming any coverage of this policy must also:
>
> a. cooperate with us and assist us in any matter concerning a claim or suit.
>
> ….
>
> d. authorize us to obtain medical, employment, vehicle and other records and documents we request, as often as we reasonably ask, and permit us to make copies.

(#27, Ex. B at AF00006). Thus, under the terms of this policy, Plaintiff has a duty, upon Defendant's request, to authorize Defendant to obtain his medical and employment information. If Plaintiff fails to comply with this duty, then Defendant has no duty to provide coverage if it is prejudiced by Plaintiff's noncompliance.

Plaintiff contends that he sent Defendant the signed authorizations it requested (#35, Ex. 1). This assertion is not entirely corroborated by the record. The Court has not found (and Plaintiff has not cited) any evidence suggesting Plaintiff sent Defendant an employment authorization. The record contains, however, some conflicting information as to whether Defendant ultimately received Plaintiff's medical authorization. Compare #27, Ex. C (Defendant's records noting repeatedly that it did not receive Plaintiff's medical authorization) with #27, Ex. P at 3 (Defendant's expert report stating that Defendant received Plaintiff's

///

1 medical authorization in January 2013). The record therefore suggests that Plaintiff, at best, only
2 partially complied with the duties described in his policy.
3       Plaintiff also asserts that he sent Defendant a medical and employment authorization after
4 he filed his complaint. While this is true, Plaintiff's failure to supply an authorization when
5 initially requested still qualifies as a breach of his insurance policy. See Schwartz, 2009 WL
6 2197370, at *7 (holding that a plaintiff's failure to submit an IME when initially requested was a
7 violation of coverage).
8       Despite Plaintiff's failure to fully comply with his policy, it is unclear whether Defendant
9 was prejudiced by Plaintiff's noncompliance.[2] The record shows that Plaintiff provided many
10 documents, several of which were sent at Defendant's instruction (#27, Ex. C). The record does
11 not, however, reveal the nature of those documents, nor does it plainly show whether there
12 existed additional necessary documents to which Defendant lacked access. Id. Thus, whether
13 Defendant was prejudiced by Plaintiff's noncompliance remains an issue of material fact.
14       Furthermore, even if Defendant were prejudiced, it is unclear whether Plaintiff's
15 noncompliance constitutes a material breach of his policy. Defendant was in regular contact with
16 Plaintiff. Id. Plaintiff also demonstrated his willingness and ability to gather and send documents
17 to Defendant. Id. Although Defendant noted in its files that it lacked certain records, there is little
18 evidence demonstrating whether Defendant requested these documents directly from Plaintiff. Id.
19 Thus, whether Plaintiff's actions constitute a material breach of his policy also remains an issue
20 of material fact. Therefore, the Court denies Defendant's motion for summary judgment on
21 Plaintiff's breach of contract claim.
22     2. Breach of Good Faith and Fair Dealing
23       Defendant contends that Plaintiff's claim for bad faith is unsupported by the record. To
24 establish a prima facie case of bad-faith refusal to pay an insurance claim, a plaintiff must

---

[2] Although Nevada law enforces these coverage conditions irrespective of whether there is prejudice to the carrier, Schwartz, 2009 WL 2197370, at *7, Plaintiff's insurance policy states that Defendant has no duty to provide coverage only if it is "prejudiced by [Plaintiff's] failure to comply". See #27, Ex. B at AF00006.

6

establish that the insurer had no reasonable basis for disputing coverage, and that the insurer knew or recklessly disregarded the fact that there was no reasonable basis for disputing coverage. Powers v. United Services Auto. Ass'n, 962 P.2d 596, 604 (Nev. 1998).

Defendant argues that it acted in accordance with accepted practices and had a reasonable basis for disputing Plaintiff's coverage. Defendant states that it attempted to acquire Plaintiff's medical and employment information several times. After it was unable to do so, Defendant referred Plaintiff's claim file to a nurse for review. Defendant then determined, based on the documents it had and the nurse's review, that many of Plaintiff's injuries could not be apportioned to the accident. Defendant also provides its expert report, which asserts that the foregoing shows that Defendant had a reasonable basis for disputing Plaintiff's coverage (#27, Ex. P, pp. 7-8).

This showing is sufficient to shift the burden to Plaintiff, who must set forth specific facts demonstrating that a genuine issue exists. See Matsushita, 475 U.S. at 587. Plaintiff fails to meet this burden. Most of Plaintiff's response is a litany of perceived wrongdoings[3] that contains little or no supporting argument, analysis, or facts from the record.[4] Additionally, Plaintiff has not shown (and the Court has not found) specific facts demonstrating a genuine issue on this matter. The Court grants Defendant's motion for summary judgment on Plaintiff's bad faith claim.

3. Unfair Practices

In his complaint, Plaintiff contends that Defendant violated the Nevada Unfair Claims Practices Act by engaging in specific unfair practices, which are found in NRS 686A.310(1)(b),

---

[3] Specifically, Plaintiff asserts that Defendant (1) did not perform an independent medical review, (2) sent Plaintiff's file to a nurse for review, (3) denied Plaintiff's claim, (4) did not consider Plaintiff's inability to work, (5) did not call Plaintiff's union, (6) did not properly consider all of Plaintiff's medical records, (7) did not notify Plaintiff of the medical information Defendant lacked, and (8) did not provide Plaintiff the nurse's qualifications upon his request.

[4] Plaintiff does argue that the nurse's review is not a reasonable basis for disputing coverage. This argument, however, is unsupported by the record. Furthermore, even if the nurse's report were not a reasonable basis for disputing coverage, it was not the only document Defendant considered in its decision; Defendant also reviewed Plaintiff's claim file and the records it contained (#27, Ex. C). Plaintiff does not address this, nor does he assert that Defendant had no reasonable basis for disputing coverage. The Court thus finds Plaintiff's argument unpersuasive.

7

1  (e), (f), (g), and (n). Defendant argues that summary judgment is appropriate because the
2  evidence does not support Plaintiff's allegations of unfair practices.

3  The first provision, NRS 686A.310(1)(b), prohibits an insurer from: "[f]ailing to
4  acknowledge and act reasonably promptly upon communications with respect to claims arising
5  under insurance policies." Regarding this provision, Defendant argues that there is no evidence
6  in the record that Defendant did not act reasonably promptly in its communication. Defendant
7  contends that it never refused to provide Plaintiff assistance or ignore his concerns; instead, it
8  repeatedly attempted to verify Plaintiff's medical and employment information. Defendant's
9  expert report also asserts that Defendant "investigated, handled, and adjusted plaintiff's UIM and
10 medical expense claims in a fair, reasonable, timely and proper manner consistent with the
11 commonly accepted customs, practices, and standards prevailing in the insurance industry" (#27,
12 Ex. P, p. 3).

13 The second provision, NRS 686A.310(1)(e), defines an unfair practice as: "[f]ailing to
14 effectuate prompt, fair and equitable settlements of claims in which liability of the insurer has
15 become reasonably clear." Regarding this provision, Defendant argues that the there is no
16 evidence in the record that it did not act promptly. Defendant also contends that it was not
17 responsible for any delay in Plaintiff's claim.

18 The third provision, NRS 686A.310(1)(f), prohibits an insured from "[c]ompelling
19 insureds to institute litigation to recover amounts due under an insurance policy by offering
20 substantially less than the amounts ultimately recovered in actions brought by such insureds,
21 when the insureds have made claims for amounts reasonably similar to the amounts ultimately
22 recovered." Regarding this provision, Defendant argues that it had minimal documentation when
23 it evaluated Plaintiff's claim, despite its repeated efforts to obtain authorizations from Plaintiff.
24 Defendant also contends that it was Plaintiff's decision to file suit rather than comply with
25 Defendant's requests for the signed authorizations.
26 ///

1    The fourth provision, NRS 686A.310(1)(g), defines an unfair practice as: "[a]ttempting to
2 settle a claim by an insured for less than the amount to which a reasonable person would have
3 believed he or she was entitled by reference to written or printed advertising material
4 accompanying or made part of an application." Regarding this provision, Defendant asserts that
5 there is no evidence in the record of any advertising materials accompanying Plaintiff's
6 application for benefits.

7    The fifth provision, NRS 686A.310(1)(n), prohibits an insurer from "[f]ailing to provide
8 promptly to an insured a reasonable explanation of the basis in the insurance policy, with respect
9 to the facts of the insured's claim and the applicable law, for the denial of the claim or for an
10 offer to settle or compromise the claim." Regarding this provision, Defendant contends that it
11 promptly sent Plaintiff a letter which detailed its ultimate decision, which injuries it believed
12 were related to Plaintiff's accident, and which injuries it believed existed prior to Plaintiff's
13 accident.

14    Defendant's motion is sufficient to shift the burden to Plaintiff. In his response, however,
15 Plaintiff merely references his expert's report in its entirety, asserts that it "clearly documents the
16 violations of the Unfair Practices Act" (#35, p. 38), and summarizes several provisions of NRS
17 686A.310. This fails to fulfill Plaintiff's obligations under Matsushita.

18    "Judges are not like pigs, hunting for truffles buried in briefs." Christian Leg. Soc.
19 Chapter of U. of California v. Wu, 626 F.3d 483, 487 (9th Cir. 2010). When responding to a
20 motion for summary judgment, Plaintiff has the responsibility of setting forth specific facts
21 demonstrating that a genuine issue exists. See Matsushita, 475 U.S. at 587. Plaintiff cannot
22 manufacture a genuine issue of material fact merely by making assertions in its legal
23 memoranda. See S.A. Empresa v. Walter Kidde & Co., 690 F.2d 1235, 1238 (9th Cir.1982).

24    Despite Plaintiff's failure, the Court has reviewed Plaintiff's expert report. However, the
25 Court finds that it does not create a genuine issue as to Plaintiff's unfair practice claims.
26 ///

1    Although he does not explicitly state so, Plaintiff's expert appears to suggest that
2    Defendant violated NRS 686A.310(1)(b). He states: "[i]t is clear that [Plaintiff's] concerns were
3    not ascertained or ignored as is illustrated in the payment of the UMC bill that [Plaintiff] had
4    already compromised" (#35, Ex.7, p. 6). The record does not support this assertion. The record
5    shows that Defendant received Plaintiff's phone calls and addressed his concerns,[5] called
6    Plaintiff to follow up on his claims,[6] and sent Plaintiff authorization letters in an effort to get
7    additional information.[7] The record does not suggest that Defendant failed to acknowledge or act
8    reasonably promptly upon the communications it received. The situation to which Plaintiff's
9    expert refers to is, at best, a minor miscommunication and does not create a genuine issue of fact.
10   The Court thus grants Defendant's motion for summary judgment on Plaintiff's claim under
11   NRS 686A.310(1)(b).

12   Plaintiff's expert argues that Defendant violated NRS 686A.310(1)(e) because it "was in
13   a position to evaluate [Plaintiff's] injury and wage loss claim" but instead "deflected an
14   evaluation and requested information that duplicated what it already had at its disposal" (#35,
15   Ex.7, p. 8). This argument is unsupported by the record. The record does not plainly indicate at
16   what point, if ever, Defendant's liability became "reasonably clear." Instead, it shows that the
17   information-gathering process of Plaintiff's medical and employment information was sporadic
18   and time-consuming. See #27, Ex. C. It also suggests that Defendant doubted whether the
19   information it had was complete. Id. Plaintiff's expert report does not create a genuine issue of
20   material fact. The Court accordingly grants Defendant's motion for summary judgment on
21   Plaintiff's claim under NRS 686A.310(1)(e).

22   Plaintiff's expert asserts that, even though Defendant sent Plaintiff a letter outlining its
23   decision, Defendant still violated NRS 686A.310(1)(n) because there was no reasonable basis on

---

[5] See e.g. #27, Ex. C at AF00037.

[6] See e.g. Id. at AF00034.

[7] See e.g. Id. at AF00041.

1  which it could reject Plaintiff's claim (#35, Ex. 7, p. 10). Specifically, Plaintiff's expert asserts
2  that the letter was entirely reliant on the nursing review and failed to consider aggravation or
3  activations issues. Id. This assertion is irrelevant. Under NRS 686A.310(1)(n), Defendant is not
4  required to have a "reasonable basis" for its denial; rather, it must give a prompt, reasonable
5  *explanation* of the basis for its denial. Thus, even if the Court were to believe Plaintiff's expert
6  report, it would be insufficient to satisfy Matsushita. The Court therefore grants Defendant's
7  motion for summary judgment on Plaintiff's claim under NRS 686A.310(1)(n).
8      Plaintiff's expert does not address Plaintiff's remaining unfair practice claims.
9  Defendant's motion is accordingly granted as to Plaintiff's claims under NRS 686A.310(1)(f)
10 and NRS 686A.310(1)(g).
11     4. Punitive Damages
12     Defendant asserts that Plaintiff's request for punitive damages is not supported by the
13 record because there is no clear and convincing evidence of malice, oppression, or fraud.
14 Defendant also contends that it conducted a prompt, reasonable evaluation of Plaintiff's claim
15 utilizing appropriate industry standards.
16     A plaintiff may recover punitive damages if it is "proven by clear and convincing
17 evidence that the defendant has been guilty of oppression, fraud or malice, express or implied."
18 NRS 42.005. Under this statute, "oppression" is despicable conduct that subjects a person to
19 cruel and unjust hardship with conscious disregard of the rights of the person; "fraud" is an
20 intentional misrepresentation, deception or concealment of a material fact known to the person
21 with the intent to deprive another person of his or her rights or property or to otherwise injure
22 another person; and "malice, express or implied" is conduct which is intended to injure a person
23 or despicable conduct which is engaged in with a conscious disregard of the rights or safety of
24 others. NRS 42.001(2)-(4).
25     It is the responsibility of the trial court to first determine whether, as a matter of law, the
26 plaintiff has offered substantial evidence of oppression, fraud, or malice to support a punitive

1  damages instruction. <u>Wickliffe v. Fletcher Jones of Las Vegas, Inc.</u>, 661 P.2d 1295, 1297 (Nev.
2  1983) <u>abrogated on other grounds by</u> <u>Countrywide Home Loans, Inc. v. Thitchener</u>, 192 P.3d
3  243, 253 n. 39 (Nev. 2008). Once the district court makes a threshold determination that a
4  defendant's conduct is subject to this form of civil punishment, the decision to award punitive
5  damages rests entirely within the jury's discretion. <u>Countrywide Home Loans, Inc. v. Thitchener</u>,
6  192 P.3d 243, 252-53 (Nev. 2008).

In his response, Plaintiff contends that Defendant engaged in oppression, fraud, and malice when it denied his claim and sent Plaintiff's file to a nurse for review. Plaintiff fails, however, to provide any supporting analysis, authority, or evidence from the record. Thus, Plaintiff's assertions are insufficient to create a genuine issue of material fact. <u>See</u> <u>S.A. Empresa</u>, 690 F.2d at 1238.

Plaintiff also argues that his expert testified that the nursing review was "close to fraud" and "absolutely oppressive." (#35, p. 40). Be that as it may, the record suggests that these statements are merely conclusory. Plaintiff's expert made these statements in his deposition (#35, Ex. 5, pp. 82-83). During the deposition, the expert did not explain or analyze his statements. <u>Id.</u> Furthermore, Plaintiff has not provided (and the Court has not found) their factual basis in the expert's deposition or the expert's report. <u>See</u> #35, Ex. 5; Ex. 7. Consequently, they do not raise a genuine issue of material fact.

Plaintiff fails to meet his burden under <u>Matsushita</u>. Defendant's motion regarding Plaintiff's prayer for punitive damages is granted.

IV. Conclusion

Accordingly, it is **HEREBY ORDERED** that Plaintiff's Motion for Leave to File Excess Pages (#34) is **GRANTED**;

///

///

///

1    **IT IS FURTHER ORDERED** that Defendant Mutual Insurance Company's Motion for
2    Summary Judgment (#27) is **GRANTED IN PART** as to Plaintiff's Unfair Practices claim,
3    Breach of Good Faith claim, and prayer for punitive damages and **DENIED IN PART** as to
4    Plaintiff's Breach of Contract claim.

6    DATED this __11th__ day of June 2015.

_____
Kent J. Dawson
United States District Judge